IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STANLEY T. PAGE,

               Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

          Defendant.[1]

CIVIL ACTION FILE

NO. 1:12-CV-3367-WSD-JFK

## FINAL REPORT AND RECOMMENDATION

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied his disability

applications.  For the reasons set forth below, the court **RECOMMENDS** that the

Commissioner's decision be **AFFIRMED**.

I.    **Procedural History**

Plaintiff Stanley T. Page protectively filed applications for disability insurance

benefits and supplemental security income on December 30, 2008, alleging that he

---

[1]Carolyn W. Colvin became Acting Commissioner of Social Security on
February 14, 2013, and is automatically substituted as Defendant in this matter for
Michael J. Astrue, pursuant to Fed. R. Civ. P. 25(d).

AO 72A
(Rev.8/82)

became disabled on October 1, 1999.  [Record ("R.") at 219-23, 239-40].  After Plaintiff's applications were denied initially and on reconsideration, administrative hearings were held on September 14, 2010, December 16, 2010, and July 26, 2011. [R. at 23-98].  The Administrative Law Judge ("ALJ") issued a decision on August 26, 2011, denying Plaintiff's applications, and the Appeals Council denied Plaintiff's request for review on August 3, 2012.  [R. at 1-22].  Plaintiff filed a complaint [Doc. 3] in this court on September 27, 2012, seeking judicial review of the Commissioner's final decision.

## II.    Facts

The ALJ found that Plaintiff has low back pain secondary to degenerative disc disease of the lumbar spine.  [R. at 14].  Although this impairment is "severe" within the meaning of the Social Security regulations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. at 14]. The ALJ found that Plaintiff was unable to perform any of his past relevant work but that he can perform a significant number of jobs in the national economy.  [R. at 17-18].  As a result, the ALJ concluded that Plaintiff has not been under a disability from the alleged onset date through the date of the ALJ's decision.  [R. at 17-18].

The decision of the ALJ [R. at 10-18] states the relevant facts of this case as modified herein as follows:

The claimant testified at the September 2010 hearing that he was 41 years old. He has an eleventh grade regular education and completed his GED. His last job was in 1998 or 1999, and he stopped working because he was incarcerated for aggravated assault. He testified that his representative picked him up and brought him to the hearing, although he does have a license to drive. (Exhibit 2F).

It was the claimant's opinion that he is unable to work due to sharp pains shooting through his back. He also described a stinging burning sensation and indicated that the pain radiates to the right leg. He has no problems with his knees, but he does have a stiff back. He first indicated that the pain medications allow him to sleep but then stated that he wakes up during the night due to pain. If he is lying on his back, his arm becomes numb.

The claimant also testified that standing causes pain that requires him to sit or lie down for relief. He indicated that after he lies down for ten to fifteen minutes, he is able to do things for a brief period of time before needing to rest again. He testified that he gets up around 6 a.m. and makes his own breakfast. He has always been a mobile person and takes care of his personal needs but sits between washing his face

3

and brushing his teeth.  During the day, the claimant attends therapy, sits around the house, and watches the news.  He does not eat lunch, and his sister prepares dinner. His sister also does the shopping, although he testified that he could shop but chooses not to.  (Exhibit 2F).  Chores such as vacuuming are also performed by his sister and niece.  He indicated that he does not use a computer due to a small stroke affecting his right eye.

The claimant stated that he is able to walk ten to fifteen yards at the most before his legs become numb and the pain requires him to sit down.  Bending and stooping are painful.  He can only reach above his head for five to ten minutes before his hands become numb.  He can climb stairs with the assistance of a rail.  He was not sure how much he can lift but indicated that his doctors and therapist advised him not to lift more than ten to fifteen pounds.  The claimant is independent in feeding, bathing, and activities of personal hygiene.  He is also able to use public transportation.  (Exhibit 2F).

With respect to the location, duration, frequency, and intensity of the claimant's pain and other symptoms, he reported chronic low back pain for approximately ten years.  He has described the pain as sharp, shooting, burning, and radiating to the right lower extremity.  He has also reported associated numbness and tingling in the right

4

leg.  On a scale of one to ten, with ten being the most severe, he has rated his pain as a nine.  He reports the pain is aggravated by standing and walking for prolonged periods of time.  (Exhibits 2F and 5F).

Turning to the objective medical evidence, the record reflects a diagnosis of moderate degenerative disc disease of L5-Sl, diagnosed by an x-ray study in March 2009.  The claimant subsequently underwent MRI studies which revealed L5-Sl grade I to II anterolisthesis in association with a pars defect contributing to severe bilateral formaminal stenosis as well as nerve root impingement.  (Exhibits 4F and 5F).  During his incarceration, he was recommended to avoid prolonged standing.  (Exhibit 1F).  He has also been treated conservatively with epidural steroid injections at one time, as well as the pain medications Naproxen, Ultram, Flexeril, and Mobic.  (Exhibit 2F).  However, the claimant has never been recommended for surgery, and there is no evidence of further treatment.  Moreover, physical examinations have consistently shown full range of motion of the spine and normal gait and posture.  (Exhibit 5F).  During a consultative physical examination, he was observed to transfer on and off the examination table independently and ambulate independently without an assistive device with a nonantalgic gait.  He was noted to "demonstrate poor suboptimal effort

5

throughout the exam particularly with manual motor testing of the right lower extremity and with squatting." There was full range of motion of the cervical and lumbar spine, despite diffuse tenderness to palpation. Straight leg raising tests were also negative in the sitting and supine positions. Tandem walking was performed with minimal difficulty. (Exhibit 2F).

As to the opinion evidence, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in the ALJ's decision. Dr. Charles Hancock completed a medical interrogatory in which he indicated that the claimant's degenerative lumbar disc disease with foraminal narrowing would limit him to a restricted range of light work, especially considering the effects of obesity. (Exhibit 8F). Charles Carnel, M.D., the examining medical consultant, found that the claimant was able to lift/carry up to 75 pounds; sit/stand/walk at least eight hours each; and handle objects without difficulty. (Exhibit 2F). The ALJ also considered the residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services. (Exhibits 3F and 6F).

AO 72A

(Rev.8/82)

The claimant has past relevant work as a tray packer, forklift operator, and dockworker. The vocational expert testified that the claimant's past relevant work was performed at the medium to heavy exertional level and was unskilled to semi-skilled in nature.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.   Standard of Review

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. §§ 423(d)(2) and (3).

7

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1440. "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving his disability. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he has not engaged in substantial gainful activity. See id. The claimant must establish at step two that he is suffering from a severe

8

impairment or combination of impairments.  See id.  At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience.  See id.  "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work."  Doughty, 245 F.3d at 1278.  "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work."  Id.  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.   Findings of the ALJ

The ALJ made the following findings of fact:

1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2002.

9

2.    The claimant has not engaged in substantial gainful activity since October 1, 1999, the alleged onset date.  (20 C.F.R. §§ 404.1571, *et seq.*, and 416.971, *et seq.*).

3.    The claimant has the following severe impairment: low back pain secondary to degenerative disc disease of the lumbar spine.  (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.    The claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except he is unable to perform repetitive crouching, crawling, squatting, reaching overhead, pushing/pulling, or operation of arm controls.  He also has a fair ability to maintain attention and concentration for extended periods beyond two hours and a fair ability to perform at a consistent pace (taking occasional breaks).

6.    The claimant is unable to perform any past relevant work.  (20 C.F.R. §§ 404.1565 and 416.965).

7.    The claimant was born on May 3, 1962, and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  (20 C.F.R. §§ 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English.  (20 C.F.R. §§ 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (See Social Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 1999, through the date of the ALJ's decision. (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

[R. at 13-18].

## V.   Discussion

The ALJ in the present case found at the first step of the sequential evaluation that Plaintiff Stanley Page has not engaged in substantial gainful activity since the alleged onset date of October 1, 1999. [R. at 13]. At the second step, the ALJ determined that Plaintiff's low back pain is a severe impairment. [R. at 14]. However, the ALJ found at the third step that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Id.]. The ALJ found at the fourth and fifth steps that, although Plaintiff is unable to perform any of his past relevant work, there are other jobs that exist in significant numbers in the national economy that he can perform. [R. at 14-18]. As a result, the ALJ concluded that

11

Plaintiff has not been disabled during the relevant time period. [R. at 18]. Plaintiff Page argues that the ALJ's decision should be reversed.

### A.    Listed Impairment

Plaintiff first contends that substantial evidence does not support the ALJ's determination that Plaintiff's back impairment does not meet a listed impairment. [Doc. 8 at 8-14]. The ALJ noted in her decision that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." [R. at 14]. The ALJ specifically found that Plaintiff's back impairment did not satisfy the criteria set forth in Listing 1.04. [Id.]. Plaintiff argues that the evidence shows that he meets the requirements of subsections A and C of Listing 1.04. [Doc. 8 at 8-14]. Listing 1.04 provides, in pertinent part:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or . . .

12

     C. Lumbar spinal stenosis resulting in pseudoclaudication,[2] established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

     "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 110 S. Ct. 885, 891 (1990) (emphasis in original).  Moreover, "[t]o establish that a listing is met, the medical criteria must be met for a period of twelve continuous months."  Castro v. Astrue, 2009 WL 1975513, at *4 (M.D. Fla. July 8, 2009) (citing SSR 86-8 ("[W]hen such an individual's impairment or combination of impairments meets or equals the level of severity described in the Listing, and also meets the duration requirement, disability will be found. . . .")).

     With regard to subsection A of Listing 1.04, Plaintiff is able to offer evidence of nerve root compression.  The findings of a March 2009 MRI show "nerve root

---

     [2]Pseudoclaudication "is manifested as pain and weakness, and may impair ambulation.  Symptoms are usually bilateral, in the low back, buttocks, or thighs, although some individuals may experience only leg pain. . . .  The pain is provoked by extension of the spine, as in walking or merely standing, but is reduced by leaning forward.  The distance the individual has to walk before the pain comes on may vary." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00K3.

impingement secondary to loss disc height, annular bulge, facet arthropathy and anterior listhesis." [R. at 393]. However, Plaintiff has not cited to evidence showing that he is able to meet the remaining requirements of Listing 1.04A: limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and positive sitting and supine straight-leg raising tests.[3]  Records reveal that Plaintiff was repeatedly found to have full range of motion of the spine, both before and after the March 2009 MRI showing nerve root impingement. [R. at 346, 382, 401, 404, 413, 422]. With regard to motor loss, atrophy, or muscle weakness, records indicate that Plaintiff's reflexes were normal and that he consistently retained full strength. [R. at 341, 382, 401, 404, 413, 422]. The Commissioner notes that Dr. Carnel found during the March 2009 evaluation that Plaintiff had decreased strength in his right leg. [R. at 382]. However, Dr. Carnel noted, "This is inconsistent with the plaintiff's ability to perform toe and heel walking as well as squatting with minimal difficulty." [R. at 382]. Dr. Carnel also noted, "The patient does demonstrate poor suboptimal effort throughout the exam particularly with manual motor testing of the right lower extremity and with

---

[3]The straight-leg raising tests are required pursuant to the listing because Plaintiff's impairment involves the lower back. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

14

squatting." [R. at 381]. The only straight-leg raising tests that the parties have identified for both the seated and supine positions were negative. [R. at 382]. Given this evidence, the court finds that Plaintiff has failed to carry his burden of showing that he meets all of the criteria for Listing 1.04A.

In order to meet subsection C, Plaintiff must demonstrate *inter alia* that his lumbar impairment results in an "inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C. Listing 1.00B2b, in turn, provides:

> *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2).

Plaintiff testified at the administrative hearing that he is only able to walk for approximately ten or fifteen yards. [R. at 69]. He stated that after this short amount

15

of walking, his leg begins to go numb and he has to sit down.  [Id.].  Plaintiff also

testified that he has to take frequent breaks when performing tasks.  [R. at 61-63].  He

argues that this testimony establishes that he is unable to ambulate effectively.  [Doc.

8 at 12-13].  However, the evidence in the record, including Plaintiff's own statements,

does not support his assertions on this issue.

As noted *supra*, one example of ineffective ambulation is the inability to climb

a few steps at a reasonable pace with the use of a single hand rail.  20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 1.00B2b(2).  Plaintiff, however, testified at the hearing that he has

the ability to climb steps with the use of a hand rail.  [R. at 70].  Other examples of

ineffective ambulation are the inability to walk a block at a reasonable pace on rough

or uneven surfaces, the inability to use standard public transportation, and the inability

to carry out routine ambulatory activities, such as shopping and banking.  20 C.F.R.

Pt. 404, Subpt. P, App. 1, § 1.00B2b(2).  During his exam with Dr. Carnel in March

2009, Plaintiff stated that he is able to walk for one and half blocks and that he uses

public transportation.  [R. at 380].  Plaintiff testified at the hearing that although he

does not shop, he believes that he could do so.  [R. at 68-69].  And he informed a

medical provider in February 2009 that he exercised regularly.  [R. at 421].  Medical

records repeatedly indicate that Plaintiff was able to heel and toe walk normally and

16

that his gait was intact.  [R. at 346, 359, 365, 367, 404, 422].  And on a number of occasions, treating sources instructed Plaintiff to engage in exercise and more walking. [R. at 346, 359, 365, 367, 371].  In summary, the record does not support a finding that Plaintiff's lumbar impairment results in an "inability to ambulate effectively."  Plaintiff has failed to show that he meets the criteria for Listing 1.04C.

"A claimant who contends that he has an impairment that meets or equals a Listing bears the burden of presenting evidence establishing how his impairment meets or equals that Listing."  Wilbon v. Comm'r of Social Security, 181 Fed. Appx. 826, 828 (11th Cir. 2006).  Plaintiff has not carried this burden.  Accordingly, the undersigned concludes that substantial evidence supports the ALJ's finding that Plaintiff's back impairment does not meet or equal a listed impairment.

**B.    Cross Examination of Medical Expert**

Plaintiff next argues that the ALJ erred when she limited counsel's cross examination of Dr. Charles Hancock, a medical expert.  [Doc. 8 at 14-16].  After the administrative hearing on December 16, 2010, the ALJ asked Dr. Hancock to review Plaintiff's record and answer interrogatories about his impairment.  [R. at 436-44]. The ALJ informed Plaintiff's counsel of this fact, sent him Dr. Hancock's interrogatories, and notified Plaintiff's counsel that he could request a supplemental

17

hearing.  [R. at 292-93].  After Plaintiff's counsel requested a supplemental hearing, one was held on July 26, 2011, for the purpose of allowing counsel to cross examine Dr. Hancock.  [R. at 23-51, 296-98].

Plaintiff alleges that the ALJ "refused to permit counsel for Plaintiff to cross-examine Dr. Hancock on the issue of the physician's conclusion that Plaintiff does not meet a listed impairment."  [Doc. 8 at 15].  Plaintiff argues that the ALJ's decision to limit his questioning of Dr. Hancock violated 20 C.F.R. § 416.1416(b)(4), which provides, "You may present any witnesses and question any witnesses at the hearing."  Plaintiff also contends that the ALJ "violated Plaintiff's Constitutional guarantees to due process and the right to confront witnesses."  [Doc. 8 at 15-16].  According to Plaintiff, the ALJ's error was prejudicial, harmful, and egregious.  [Doc. 8 at 14-16].

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  "Nevertheless, there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record."  Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995) (citing Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985)).  In making this determination, courts "are guided by

18

whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." Id. (citations and internal quotation marks omitted).  In the present case, Plaintiff has failed to show that he was prejudiced by the ALJ's decision to limit his counsel's questioning of Dr. Hancock.

The ALJ granted the request for a supplemental hearing made by Plaintiff's counsel in order to allow counsel to cross examine Dr. Hancock.  [R. at 23-51, 296-98].  During the hearing, the ALJ allowed Plaintiff's counsel to offer numerous questions to Dr. Hancock in his cross examination.  [R. at 28-43].  A transcript of the hearing reveals that after Plaintiff's counsel had questioned Dr. Hancock extensively, the ALJ stated to counsel, "I have been very liberal with your questioning this morning.  I'm not going to allow you to go through every criteria of every listing – even of the musculoskeletal listing – because Dr. Hancock has already answered that question."  [R. at 43].  Counsel then began arguing with the ALJ about whether the ALJ could limit counsel's cross examination.[4]  [R. at 43-48].

---

[4]After the ALJ instructed Plaintiff's counsel to move on to his next question, counsel asked Dr. Hancock how much he got paid for his work as a medical expert. [R. at 45-47].  The ALJ instructed Dr. Hancock that he did not have to answer that question. Counsel for Plaintiff subsequently stated, "This is a – your honor, this is not a hearing, your honor.  This is not a fair hearing.  I want a fair hearing."  [R. at 47]. The ALJ stated, "[T]here are certain procedures you can take.  And that does not include being derogatory to me or to Dr. Hancock."  [R. at 47-48].  Plaintiff's counsel

AO 72A
(Rev.8/82)

Even if the ALJ had not permitted a supplemental hearing at all, it does not appear that Plaintiff would be able to show prejudice because the ALJ gave only moderate weight to the opinion of Dr. Hancock. Moreover, as noted *supra*, the ALJ granted a supplemental hearing and permitted Plaintiff's counsel to ask Dr. Hancock numerous questions regarding his opinion that Plaintiff does not meet a listing. [R. at 25-49]. Although 20 C.F.R. § 416.1416(b)(4), the regulation cited by Plaintiff, provides that witnesses may be questioned during a hearing, the regulation does not grant a claimant or his counsel the right to ask unlimited questions. It is clear from both the transcript and Plaintiff's brief that counsel for Plaintiff does not believe that the ALJ acted fairly in placing limits on his questioning during the supplemental hearing. However, Plaintiff has not established that the ALJ's management of the hearing produced evidentiary gaps which resulted in unfairness or clear prejudice. See Brown, 44 F.3d at 935. For all these reasons, the undersigned concludes that remand is not warranted on this issue.

---

then stated, "I move that the court recuse itself from this case. The court's case has been – the court has been biased in this case since day 1. Since day 1, your honor. All I want is a fair hearing. If I lose on the merits, fine. But this – your honor, the fact that Dr. Hancock was even called is ridiculous." [R. at 48]. The hearing concluded shortly thereafter, with the ALJ instructing counsel to put into writing his motion for recusal. [R. at 49].

AO 72A

(Rev.8/82)

C.     RFC Assessment

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. . . . Along with his age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work." Lewis, 125 F.3d at 1440 (citing 20 C.F.R. §§ 404.1545(a), 404.1520(f)).   In determining the claimant's residual functional capacity ("RFC"), the ALJ is required to consider the limiting effects of all the claimant's impairments, even those that are not severe. See Phillips, 357 F.3d at 1238 ("[T]he ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case."); 20 C.F.R. § 404.1545(e).  The ALJ in the present case wrote: "[T]he claimant has the residual functional capacity to perform sedentary work . . . except he is unable to perform repetitive crouching, crawling, squatting, reaching overhead, pushing/pulling, or operation of arm controls. He also has a fair ability to maintain attention and concentration for extended periods beyond two hours and a fair ability to perform at a consistent pace (taking occasional breaks)."  [R. at 14].

Plaintiff argues that the ALJ erred in making her RFC assessment because she relied upon the reports from Dr. Carnel, Dr. Hancock, and two state agency physicians,

21

and because she improperly evaluated Plaintiff's daily activities and complaints of pain. [Doc. 8 at 16-29]. Although Plaintiff has offered a number of arguments in this section of his brief, the premise behind each of them is the same–that the ALJ should have credited Plaintiff's testimony and discounted the physicians' opinions. [Id.]. As the Commissioner correctly notes, "Plaintiff asks the Court to disregard the opinion of every medical source who offered an opinion regarding Plaintiff's RFC and instead credit his subjective testimony that he is disabled." [Doc. 9 at 16-17].

The ALJ explained in her decision that Dr. Carnel, an "examining medical consultant, found the claimant was able to lift/carry up to 75 pounds; sit/stand/walk at least eight hours each; and handle objects without difficulty." [R. at 16, 380-83]. Plaintiff argues that Dr. Carnel's conclusions are incorrect because he did not have an MRI which was taken sixteen days after Dr. Carnel's exam. [Doc. 8 at 18]. The deficiency in Plaintiff's argument is that Dr. Carnel actually examined Plaintiff and agreed that he had low back pain, lumbar degenerative disc disease. [R. at 380-83]. The purpose of Dr. Carnel's examination was to provide an assessment of Plaintiff's physical abilities, and it is clear that Dr. Carnel based his assessment in large measure on his examination and clinical observations of Plaintiff. [Id.]. Dr. Carnel, for example, noted that Plaintiff was "able to transfer on and off the exam table

22

independently," that he "ambulates independently without an assistive device with a nonantalgic gait," and that he had "full range of motion of the cervical and lumbar spine." [R. at 381-82]. Dr. Carnel's clinical observations of Plaintiff's abilities during the exam would not have changed if the physician had had access to an MRI. Furthermore, the ALJ specifically stated that she gave "only slight weight" to Dr. Carnel's opinion. [R. at 16]. There is no indication that Plaintiff suffered prejudice by the ALJ giving such minimal weight to the opinion of the examining physician.

Plaintiff also argues that the ALJ committed error in making her RFC assessment by relying upon the opinion of Dr. Hancock. [Doc. 8 at 22-24]. As noted *supra*, after the administrative hearing, the ALJ asked Dr. Hancock to review Plaintiff's record and answer interrogatories about his impairment. [R. at 436-44]. Dr. Hancock found that Plaintiff did not meet a listing and that he was capable of a restricted range of light work. [Id.]. Specifically, Dr. Hancock found *inter alia* that during an eight hour work day Plaintiff is able to walk for six hours, stand for six hours, sit for six hours, lift and carry twenty pounds occasionally, and push ten pounds frequently. [Id.]. Counsel for Plaintiff cross examined Dr. Hancock during a supplemental hearing on July 26, 2011. [R. at 23-51, 296-98]. The ALJ stated that she gave only moderate weight to Dr. Hancock's opinion because "he did not have the

23

benefit of personally observing the claimant or reviewing the testimony of the claimant." [R. at 16].

Dr. Hancock wrote in his assessment that a restricted range of light work was appropriate for Plaintiff, "especially when obesity is considered." [R. at 438]. Dr. Hancock then cited to Dr. Carnel's March 2009 examination which listed Plaintiff's weight as being 270 pounds. [R. at 381, 438]. Plaintiff has established that this could not have been his actual weight because numerous reports both immediately before and after Dr. Carnel's exam stated that Plaintiff weighed around 184 pounds. [R. at 395, 412, 420]. Plaintiff argues that Dr. Hancock's mistaken note about Plaintiff being obese establishes that the physician did not review the entire record and that the ALJ should not have given any weight to Dr. Hancock's opinion. [Doc. 8 at 24].

The Commissioner does not dispute that Dr. Hancock mistakenly relied upon Dr. Carnel's notation that Plaintiff weighed 270 pounds in March 2009. However, this mistake does not establish that Dr. Hancock failed to review the entire record. Dr. Hancock stated that he reviewed all of the evidence in Plaintiff's record and his testimony at the supplemental hearing reveals that he was familiar with the record. [R. at 23-51, 444]. More importantly, there is no evidence that Plaintiff was unduly prejudiced by Dr. Hancock's mistake regarding his weight. Social Security Ruling 02-

24

1p provides, "The combined effects of obesity with other impairments may be greater than might be expected without obesity." Dr. Hancock based his findings, in part, on his belief that Plaintiff was obese, and obesity combined with other impairments can result in an individual having greater functional restrictions. It seems clear that Dr. Hancock's mistake resulted in him finding that Plaintiff had greater limitations than would be expected if the physician had correctly understood that Plaintiff was not obese. Furthermore, the ALJ explicitly wrote in her decision than any limitation arising from Plaintiff's weight was reflected in her RFC determination. In light of these facts, the undersigned finds that Plaintiff has failed to show that the ALJ's decision to grant moderate weight to Dr. Hancock's opinion was unduly prejudicial.

Plaintiff next argues that in making her RFC assessment, the ALJ not only should have ignored the opinions of Dr. Carnel and Dr. Hancock, she should have ignored the opinions of two state agency medical sources, Mo-Folorunsho Akintobi and Dr. Sherry Crump. [Doc. 8 at 19-21; R. at 384, 424-31]. Plaintiff argues that the sources did not examine Plaintiff, they improperly relied on the opinion of Dr. Carnel, and that it is not clear if one of the sources was a physician. [Id.]. These arguments are unpersuasive.

25

Dr. Carnel, as discussed *supra*, examined Plaintiff and provided an assessment of his physical abilities based in large measure on his examination and clinical observations of Plaintiff. [R. at 380-83]. Contrary to Plaintiff's arguments, it was not error for the state agency sources to consider Dr. Carnel's findings and opinions. And while Plaintiff is correct that the stage agency sources did not examine Plaintiff, Social Security regulations require ALJs to consider the opinions of all medical sources, even those that are nonexamining. See 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ in the present case considered the state agency opinions and pointed out that they did not examine Plaintiff. [R. at 16]. The ALJ also wrote, "[L]esser weight is given to these conclusions because additional evidence received into the record since that time, in conjunction with the claimant's testimony, convinces the undersigned that the claimant is more limited than was originally determined." [R. at 16-17]. Plaintiff notes that one of the state agency sources is listed as "Mo-Folorunsho Akintobi" with no indication that this person is a medical doctor. [R. at 431]. However, the source checked the box on the form indicating that he or she was a medical consultant. [R. at 431]. Even if the source is not a medical doctor, Plaintiff has failed to show how an ALJ giving "lesser weight" to the opinion of a medical consultant constitutes error when it is consistent with the opinions of other medical sources who are physicians. Substantial

26

evidence supports the ALJ's decision to grant lesser weight to the opinions of the state agency consultants.

Plaintiff's next argument is that the ALJ improperly evaluated his credibility. Plaintiff testified that he is unable to work due to sharp back pain and pain radiating to his right leg. He rated his pain as a nine on a scale of one to ten and alleged that the pain is aggravated by standing and walking. [R. at 13, 15, 57-75]. Plaintiff testified, "[I]f I stand up for a long period of time, it numbs my right side. If I sit down for a long period of time, it does the same thing." [R. at 61]. Plaintiff stated that the pain requires him to sit or lie down for ten to fifteen minutes. He is then able to perform some tasks for a brief period of time before needing to rest again. [R. at 13, 61-63]. Plaintiff testified that he is able to walk ten to fifteen yards at the most and that he can climb stairs with the assistance of a hand rail. [R. at 15, 68-70]. The ALJ found that Plaintiff's back impairment could reasonably be expected to cause the alleged symptoms but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the ALJ's RFC assessment. [R. at 15]. Plaintiff argues that the ALJ's consideration of his subjective testimony was erroneous. According to Plaintiff, the ALJ did not accurately evaluate his daily activities and improperly rejected his complaints of pain.

27

When a claimant seeks to establish disability through subjective testimony of pain, a three part "pain standard" established by the Eleventh Circuit applies. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Id. The ALJ must consider the claimant's subjective testimony of pain if the pain standard is met. See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

If the ALJ decides to discredit a claimant's testimony of pain, she must give explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The relevant Social Security regulations provide that factors which will be considered by the ALJ in evaluating a claimant's subjective symptoms include: daily activities; location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate his symptoms; treatment received and measures used, other than medication, for the relief of symptoms; and any other factors concerning the

28

functional limitations and restrictions due to the claimant's symptoms. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote, 67 F.3d at 1562 (citing MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986)). The undersigned finds that the ALJ gave numerous specific reasons for evaluating Plaintiff's subjective testimony and that substantial evidence supports the ALJ's finding that Plaintiff's complaints were not entirely credible. [R. at 15].

The ALJ explained that Plaintiff "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." [R. at 15]. As the ALJ noted, Plaintiff testified that he is able to take care of himself and use public transportation and that, although he does not shop, he is able to do so.[5] [R. at 63-69]. Plaintiff has kept his drivers license current and is able to drive. [R. at 77-78]. Contrary to Plaintiff's assertions, there was nothing improper about the ALJ noting Plaintiff's daily activities and considering them in her credibility determination. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.

_____

[5]Plaintiff writes that he "never testified that he used public transportation every day." [Doc. 8 at 25]. This is both true and irrelevant as the ALJ did not state that Plaintiff uses public transportation every day. [R. at 15].

29

Plaintiff argues that the "ALJ failed to provide justification for rejecting Plaintiff's subjective symptoms of pain." [Doc. 8 at 27]. According to Plaintiff, the ALJ's reasoning for rejecting portions of Plaintiff's testimony is flawed because "it assumes the ability to move necessarily negates a finding of disability." [Id.]. The weakness in Plaintiff's argument is that there is no indication that the ALJ discounted Plaintiff's complaints of pain because of his ability to move. Instead, the ALJ correctly noted that Plaintiff's complaints of constant and severe pain are not consistent with physical examinations and clinical findings made by physicians. The ALJ pointed out, for example, that despite Plaintiff's complaints of disabling back pain, examinations consistently showed that Plaintiff has full range of motion of the spine. [R. at 16, 346, 382, 401, 404, 413, 422]. The ALJ also noted that records repeatedly indicated that Plaintiff's gait was normal. [R. at 16, 346, 359, 365, 367, 404, 422]. During a consultative exam with Dr. Carnel, Plaintiff was "able to transfer on and off the exam table independently" and it was noted that he "ambulates independently without an assistive device with a nonantalgic gait." [R. at 16, 381-82]. In addition, the ALJ cited to Dr. Carnel's notation that Plaintiff "demonstrate[d] poor suboptimal effort throughout the exam particularly with manual motor testing of the right lower extremity and with squatting." [R. at 16, 381]. Straight-leg raising tests

30

for both the seated and supine positions were negative, and tandem walking was performed with minimal difficulty. [R. at 16, 382]. As found by the ALJ, this evidence is not consistent with Plaintiff's complaints of constant and severe pain.

Finally, the ALJ noted that Plaintiff has never been recommended for surgery and that he has "been treated conservatively with epidural steroid injections at one time, as well as the pain medications Naproxen, Ultram, Flexeril, and Mobic." [R. at 16]. It was proper for the ALJ to consider Plaintiff's treatment when assessing his testimony. As the Eleventh Circuit has held, "When evaluating a claimant's statements regarding his symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints." Beegle v. Social Security Admin., Comm'r, 482 Fed. Appx. 483, 487 (11th Cir. 2012) (per curiam) (citing SSR 96-7p).

In summary, the court finds that the ALJ properly evaluated the record evidence when she made her RFC assessment. The ALJ stated the weight that she gave to the opinions of the various medical sources and offered reasons for assigning the weight given. See Forrester v. Comm'r of Social Security, 455 Fed. Appx. 899, 902 (11th Cir. 2012) ("The ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so.") (citing Sharfarz v. Bowen, 825 F.2d 278, 279

31

(11th Cir. 1987)).  The ALJ also provided numerous reasons for not fully crediting Plaintiff's subjective complaints, and those reasons are supported by substantial evidence in the record.  Moreover, Plaintiff has failed to point to any medical sources who offered opinions about his functional limitations that were more restricted than those found by the ALJ.[6]  For these reasons, the undersigned concludes that the ALJ did not commit error when she made her assessment of Plaintiff's RFC.[7]

## VI.   Conclusion

For all of the forgoing reasons and cited authority, the undersigned finds that the ALJ applied proper legal standards in reaching her decision that Plaintiff Page was not disabled and that the ALJ's decision was supported by substantial evidence.  It is, therefore, **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

---

[6]Plaintiff contends that the ALJ mistakenly required Plaintiff to show that a treating physician considered him disabled. [Doc. 8 at 28-29].  This is incorrect.  The Commissioner correctly notes that the "ALJ simply observed that none of Plaintiff's treating physicians opined he was disabled or had greater limitations than she had found." [Doc. 9 at 21].  There was nothing improper about the ALJ making this observation.

[7]Plaintiff argues that the ALJ erred in finding that he can perform sedentary work. [Doc. 8 at 29-30].  The basis of Plaintiff's contention is that the ALJ should have credited his testimony about his pain and resulting functional limitations. [Doc. 8 at 30].  Although this argument is labeled under a separate heading in Plaintiff's brief, as the Commissioner notes, it is nothing more than a restatement of Plaintiff's RFC argument which the court has already addressed. [Id.; Doc. 9 at 22].

AO 72A

(Rev.8/82)

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 08-01 (N.D. Ga. June 12, 2008).  The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED**, this 4th day of November, 2013.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A

(Rev.8/82)